FILED

2011 Nov-10  PM 03:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM POSEY, DEBRA POSEY, | ] |
| | ] |
| Plaintiffs, | ] |
| | ] |
| vs. | ]   2:10-CV-02500-LSC |
| | ] |
| BANK OF AMERICA, NA, et al., | ] |
| | ] |
| Defendants. | ] |

MEMORANDUM OF OPINION

I.     Introduction.

The Court has for consideration motions for summary judgment filed by Bank of America, N.A. ("Bank of America"), JPMorgan Chase Bank, N.A. ("Chase"), as acquirer of certain assets and liabilities of Washington Mutual Bank ("Washington Mutual") from the Federal Deposit Insurance Corporation ("FDIC") (Doc. 25), Lender Processing Service, Inc. ("LPS"), and LPS Foreclosure Solutions, Inc. ("LPS Foreclosure") (Doc. 36).  Plaintiffs William and Debra Posey sued Defendants for wrongful foreclosure, conversion, fraud/suppression, and civil conspiracy related to the foreclosure of their home on August 12, 2008.  Defendants have moved for summary judgment on all of Plaintiffs' claims.  Plaintiffs reached a confidential

settlement of their claims against Bank of America and Washington Mutual. (Doc. 35 at 1.)  Accordingly, the motion for summary judgment filed by these two defendants is MOOT.  The issues raised in LPS and LPS Foreclosure's motion for summary judgment have been briefed by the parties[1] and are now ripe for review.  Upon full consideration of the legal arguments and evidence presented, the motion will be granted in all respects.

II.    Facts.[2]

Plaintiffs William and Debra Posey entered into a mortgage contract ("the Mortgage") with Castle Mortgage Company on or about April 16, 2003, to obtain re-financing of their family home.  Castle Mortgage Company then sold the Mortgage to

---

[1]Plaintiffs filed a motion for leave to file their response brief out of time. (Doc. 39.)  That motion is GRANTED.  LPS and LPS Foreclosure filed a motion to strike Plaintiffs' response brief because Plaintiffs' motion asked for an extension until August 15, 2011, and Plaintiffs did not file their evidence in support of their response until 12:50 a.m. on August 16, 2011. (Doc. 43.)  The LPS Defendants also seek to strike two depositions that they, themselves, filed in their entirety.  Defendants' motion to strike is DENIED.  However, to the extent the LPS Defendants object to evidence as hearsay or unauthenticated, the Court has considered those characterizations.  The potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process.  Immaterial evidence, irrelevant evidence, and other evidence that could not be reduced to admissible form at trial, see Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999), was rejected by the Court when making its final decision.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  See Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund, 17 F.3d 1386, 1400 (11th Cir. 1994).

Washington Mutual Bank.  In 2007, Plaintiffs' adjusted gross income dropped nearly 39%, and Plaintiffs missed or were late making their mortgage payments on several occasions.  Plaintiffs' counsel sought information from Washington Mutual regarding a loan modification, and a Washington Mutual representative informed her that the loan account must be at least three payments past due.  Plaintiffs subsequently discontinued making their mortgage payments.  No modification was approved, and Washington Mutual initiated foreclosure proceedings.

Plaintiffs filed for Chapter 7 bankruptcy protection in April 2008, hoping to keep their home.  Washington Mutual filed a Motion for Relief from Automatic Stay, which was granted without objection, allowing the foreclosure to proceed.  Plaintiffs' property was foreclosed on August 12, 2008, for failure to make payments in accordance with the terms of the Mortgage.

LPS Foreclosure is a wholly-owned and indirect subsidiary of LPS.  LPS is a holding company; it has no employees and does not own or license any software or technology.[3]  (Cloin Aff. ¶ 2.)  LPS Foreclosure, currently known as "LPS Default,"

---

[3]Plaintiffs dispute the characterization of LPS as a mere "holding company." Plaintiffs argue that "LPS operates its subsidiaries in a cooperative and coordinated fashion, and to maximize the overall profitability of its corporate enterprise, LPS disregards the separate nature of its subsidiaries, which are instrumentalities, and operated as "corporate divisions of the LPS parent." (Doc. 40 at 6.)  However, Plaintiffs do not cite to any evidence in support of this argument. (*Id*. at 6, 22.) Federal Rule of Civil Procedure 56(c)(1) requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record,

designed a proprietary and fully-hosted, web-based application for the management of foreclosures and bankruptcies ("the System"). (*Id.* ¶¶ 2-3.) The company describes the System as a "workflow management tool." (*Id.* ¶ 3.) LPS Foreclosure provides access to the System to loan-servicing clients and client-selected law firms. The System allows clients and their law firms to share and access information and documents in a secure manner, including monitoring the status of legal actions, tracking action items, and providing reports related to a particular loan. (*Id.* ¶¶ 3-4.)

On March 6, 2008, LPS Foreclosure provided access to the System to Washington Mutual and its selected law firm, Shapiro & Pickett, L.L.P. for a flat fee. Neither LPS nor LPS Foreclosure ("LPS Defendants") chose a law firm for Washington Mutual. Neither of the LPS Defendants made decisions with regard to the Mortgage or applied Plaintiffs' payments to their loan account. (*Id.* ¶¶ 3-5.) The LPS Defendants did not have any direct contact with Plaintiffs regarding the Mortgage, nor did they attempt any collection efforts or retain anyone to attempt collection efforts on the Mortgage. (*Id.* ¶¶ 6, 8.) Neither of the LPS Defendants

---

including depositions, documents, . . . or other materials; or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Accordingly, Defendants' evidence on this issue is undisputed.

charged any fees to Plaintiffs' Mortgage or was paid for services from the Plaintiffs' loan account.

III.    Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

---

[4]Although Fed. R. Civ. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

Plaintiffs contend that the LPS Defendants are liable for wrongful foreclosure, conspiracy, conversion, and fraud/suppression under Alabama law. To the extent the Complaint includes claims for breach of contract, Plaintiffs have abandoned those claims and they are dismissed.[5]

A.    Wrongful Foreclosure.

"A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Amer. Fed. Sav. & Loan*

---

[5]In the parties' Joint Amended Status Report, Plaintiffs state their position that the "Complaint does not attempt to frame a 'breach of contract' count." (Doc. 35 ¶ 3.)

*Assoc.*, 607 So. 2d 180, 182 (Ala. 1992). "Any improper use of the power for such purposes as oppressing the debtor, or serving the purposes of other individuals, will be considered by the court as a fraud in the exercise of the power." *Johnson v. Shirley*, 539 So. 2d 165, 168 (Ala. 1988).

The LPS Defendants, however, are not the mortgagee for the loan account in question, nor is there any evidence that they made any decisions with regard to the Mortgage. Plaintiffs argue the Defendants made "efforts to improperly charge and require the borrower to tender unearned, unreasonable and/or champertous 'attorney fees' and/or 'default-related charges' or suffer foreclosure of their home, in violation of the express terms of the mortgage/note contract." (Doc. 40 at 23 ¶ 49.) Plaintiffs also maintain that Defendants wrongfully accelerated payments in violation of the terms of the Mortgage contract. (*Id.* at 24-27.) Yet, it is undisputed that the LPS Defendants were not parties to the Mortgage contract, and Plaintiffs have not presented any evidence that the LPS Defendants made any charges to Plaintiffs' loan account. Accordingly, summary judgment will be granted with regard to Plaintiffs' wrongful foreclosure claim.

B.     Conspiracy.

Plaintiffs nonetheless contend that the LPS Defendants can be held liable for "wrongful foreclosure" as participants in the purported "wrongful conduct." (*Id.* at 30, 34.) In *Johnson v. Shirley*, 539 So. 2d 165 (Ala. 1988), the Alabama Supreme Court reversed a grant of summary judgment in favor of defendants on the issue of conspiracy after finding that one individual defendant's purchase at a foreclosure sale evidenced his "involvement in the alleged conspiracy" to commit wrongful foreclosure with the bank's agent, a loan officer. *Id.* at 169.

The substantive tort of conspiracy consists of:

> [T]he combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means.

*Id.* (quoting *Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 305-06 (Ala. 1986)). Conspiracy also requires "concerted action between two or more persons." *AmSouth Bank, N.A. v. Spigener*, 505 So. 2d 1030, 1040 (Ala. 1986) (quoting *Snyder v. Faget*, 326 So. 2d 113, 119 (1976)). In other words, there must be "an agreement or meeting of the minds between the conspirators. One cannot inadvertently become a member of a conspiracy." *Cobb v. Union Camp Corp.*, 786 So. 2d 501, 507 (Ala. Civ. App. 2000),

*rev'd on other grounds*, *Ex parte Union Camp Corp.*, 815 So. 2d 1039 (Ala. 2001).  A plaintiff "must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy." *Id.* (quoting *First Bank of Childersburg v. Florey*, 676 So. 2d 324, 327 (Ala. Civ. App. 1996)).

Assuming without deciding that Washington Mutual committed the tort of wrongful foreclosure, Plaintiffs have not shown the Court any evidence that either of the LPS Defendants had an agreement with Washington Mutual to effect the wrongful conduct.  Plaintiffs have not pointed to any evidence that establishes the LPS Defendants' knowledge of, or intent to bring about a wrongful foreclosure.  The LPS Defendants are entitled to summary judgment on this claim.

C.     Conversion.

Plaintiffs also sue the LPS Defendants for conversion.   "To establish conversion, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Vandenberg v. Aramark Educational Services, Inc.*, --- So. 3d ----, 2011 WL 4507358 at *14 (Ala. 2011) (citing *Crown Life Ins. Co. v. Smith*, 657 So. 2d 821, 823 (Ala. 1994)). Plaintiffs argue that "the foreclosure itself was wrongful, and as a result, the subsequent exercise over the Plaintiffs' personal

property which took place after the foreclosure, and because of the foreclosure, was likewise wrongful." (Doc. 40 at 32 ¶ 77.) However, the LPS Defendants did not foreclose on Plaintiffs' home, and Plaintiffs do not proffer any admissible evidence establishing that the LPS Defendants ever took, possessed, used, detained, interfered with, or assumed ownership of Plaintiffs' personal property. Accordingly, summary judgment will also be granted in favor of the LPS Defendants on the claim of conversion.

    D.    Fraud and Suppression.

Plaintiffs maintain that the LPS Defendants are liable for purported misrepresentations and omissions made by attorneys at the Shapiro & Pickett law firm. (Doc. 40 at 32-34.) They cite *Lawrence v. Gayle*, 312 So. 2d 385, 387 (Ala. 1975), and other case law for the proposition that "omissions and commissions of an attorney at law are to be regarded as acts of the client whom he represents." However, there is no evidence Shapiro & Pickett represented the LPS Defendants in the matters at issue. Plaintiffs have also failed to produce any evidence or cite to any authority that would allow this Court to conclude that Shapiro & Pickett acted as agents of the LPS Defendants in the course of their collection efforts in this case. Once again, summary judgment will be granted.

V.      Conclusion.

For the reasons stated above, the LPS Defendants' motion for summary judgment will be granted in all respects.  A separate order will be entered.

Done this <u>10th</u> day of <u>November 2011</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297